**NATIONAL LABOR RELATIONS
BOARD
v.
JAMESTOWN STERLING CORP.**

**No. 170, Docket 22862.**

United States Court of Appeals
Second Circuit.

Argued March 9, 1954.
Decided April 5, 1954.

George J. Bott, David P. Findling, A. Norman Somers, Owsley Vose and Jean Engstrom, Washington, D. C., for petitioner.

Rogerson & Hewes, J. Russell Rogerson, Jamestown, N. Y., for respondent.

Before CLARK, MEDINA and HARLAN, Circuit Judges.

MEDINA, Circuit Judge.

This case involves a more or less typical controversy between employer and employees. In the week of July 7, 1952, following the shutdown of the plant in the Village of Falconer, Chautauqua County, New York, during a vacation period, there began a concerted effort to unionize the employees. The discharge of the principal organizers, Cavallaro and Carlton, and the practically simultaneous announcement of an increase in wages and the granting of four paid holidays commencing with Labor Day, September 1, 1952, and an "incentive plan," coupled with a certain amount of interrogation of employees and conduct which was readily suscepti-

ble of the interpretation of a threat of discharge for union activities, present the usual issues of credibility. That there was ample justification for the discharge of Cavallaro for "visiting" and of Carlton for "absenteeism" is all too apparent. But the record justifies the conclusion reached by the triers of the facts that Pickard the president and Ruby the plant superintendent were aware of the efforts to unionize the factory, despite their denials, and numerous conversations and attendant circumstances, which we deem it unnecessary to recite in detail, support the conclusions of the Board that the unexplained coincidence of time with respect to the principal events was really no coincidence at all, but rather part of a deliberate effort by the management to scotch the lawful measures of the employees before they had progressed too far toward fruition. The conclusions of the Board were arrived at, so far as we can see, by the usual method of weighing conflicting proofs and there was no shifting of the burden of proof to respondent, as claimed. If employees are discharged partly because of their participation in a campaign to establish a union and partly because of some neglect or delinquency, there is nonetheless a violation of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. We see no reason to disturb the findings of fact, each of which we find to be supported by substantial evidence on the record as a whole. The Board found that respondent: (1) violated Sections 8(a) (1) and (3) of the Act by discharging Cavallaro and Carlton; and (2) independently violated Section 8(a) (1) of the Act by granting wage increases and other benefits to employees, by questioning employees about union activities, and by threatening Olson, one of the employees, with discharge because of his union membership. The Board ordered respondent to cease and desist from discriminating against employees because of union membership and from in any other manner interfering with, restraining or coercing employees in the exercise of rights guaranteed by Section 7 of the Act. Affirmatively, the Board ordered respondent to reinstate Cavallaro and Carlton to their former positions with back pay, and to post appropriate notices. The Decision and Order of the Board are reported at 106 NLRB No. 88.

■ In the course of the hearing it appeared, on the cross-examination of Paterniti, one of the witnesses called by the representative of the General Counsel, that Paterniti had given a statement to a Board investigator prior to the initiation of formal proceedings. After a refusal by the representative of the General Counsel to produce the statement as confidential, based upon Section 102.87 [1] of the Board's Rules and Regulations, the trial examiner at first issued a subpoena *duces tecum* requiring its production and, later, granted a motion to revoke the subpoena. There was no effort by respondent to obtain the written consent of the Board or the Chairman of the Board or the General Counsel, as required by said Section 102.87. These simple requirements might easily have been complied with. See N. L. R. B. v. General Armature & Mfg. Co., 3 Cir., 192 F.2d 316, certiorari denied 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357. Moreover, there was no showing of "good cause" for the production of the document; Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451; N. L. R. B. v. Quest-Shon Mark Brassiere Co., 2 Cir., 185 F.2d 285, certiorari denied 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614; Cleary Bros. v. Christie Scow Corp., 2 Cir., 176 F.2d 370; and the demand seems to have been a mere shot in the dark. Needlessly to require the disclosure of such confidential data would serve no useful purpose, and the establishment of a precedent favoring such procedure would inevitably impair the functioning of the investigatory powers of the Board.

The order will be enforced.

1. Series 6, 16 F.R. 1934, 1947, 1948, as amended at 17 F.R. 4983.