**Elmer P. DAVIS, Regional Director, Sixteenth Region, National Labor Relations Board, Appellant,**

v.

**BRASWELL MOTOR FREIGHT LINES, INC., Appellee.**

**No. 22513.**

United States Court of Appeals
Fifth Circuit.

July 21, 1966.

---

Gary Green, Atty., NLRB, Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Lawrence M. Joseph, Atty., National Labor Relations Board, for appellant.

Allen P. Schoolfield, Jr., Dallas, Tex., T. S. Christopher, Ft. Worth, Tex., Donald Lee Cotton, El Paso, Tex., Christopher & Bailey, Fort Worth, Tex., Schoolfield & Smith, Dallas, Tex., for appellee.

L. N. D. Wells, Jr., Mullinax, Wells, Mauzy, Levy & Richards, Dallas, Tex., amici curiae, for Teamsters Locals 745 and others.

Before GEWIN and THORNBERRY, Circuit Judges, and WEST, District Judge.

**THORNBERRY, Circuit Judge:**

This appeal arises out of the District Court's order compelling Elmer P. Davis, Regional Director of the Sixteenth Region of the National Labor Relations Board, to testify and produce certain documents in compliance with a subpoena issued on behalf of Braswell Motor Freight Lines, the defendant in an action before the District Court brought by a number of Teamsters Union locals. The Regional Director resists that order on the basis that (1) Section 102.118 of the Board's Rules and Regulations [1] forbids a subordinate employee of the Board to disclose official information without the prior written consent of the General Counsel, (2) the subpoenaed material is "irrelevant, immaterial, and incompetent" in the suit between the Teamsters and Braswell, and (3) the subpoenaed documents are privileged.

We must first review briefly the factual context of the District Court's action. Nine Teamsters local unions brought suits against Braswell alleging that as to a portion of its operation Braswell had breached its obligations under the National Master Freight Agreement to which

1. NLRB Regs., 29 C.F.R. § 102.118 provides: "No regional director, field examiner, trial examiner, attorney, specially designated agent, general counsel, member of the Board, or other officers or employee of the Board shall produce or present any files, documents, reports, memoranda, or records of the Board or testify in behalf of any party to any cause pending in any court or before the Board, or any other board, commission, or other administrative agency of the United States or of any State, Territory, or the District of Columbia with respect to any information, facts, or other matter coming to his knowledge in his official capacity or with respect to the contents of any files, documents, reports, memoranda, or records of the Board, whether in answer to a subpena, subpena duces tecum, or otherwise, without the written consent of the Board or the chairman of the Board if the official or document is subject to the supervision or control of the Board; or the general counsel if the official or document is subject to the supervision or control of the general counsel. Whenever any subpena ad testificandum or subpena duces tecum, the purpose of which is to adduce testimony or require the production of records as described hereinabove, shall have been served upon any such persons or other officer or employee of the Board, he will, unless otherwise expressly directed by the Board or the chairman of the Board or the general counsel, as the case may be, moved pursuant to the applicable procedure, whether by petition to revoke, motion to quash, or otherwise, to have such subpena invalidated on the ground that the evidence sought is privileged against disclosure by this rule: *Provided,* After a witness called by the general counsel has testified in a hearing upon a complaint under section 10(c) of the Act, the respondent may move for the production of any statement of such witness in possession of the general counsel, if such statement has been reduced to writing and signed or otherwise approved or adopted by the witness. Such motion shall be granted by the trial examiner. If the general counsel declines to furnish the statement, the testimony of the witness shall be stricken."

all the litigants were parties. One of the defenses asserted by Braswell referred to Case No. 16–CA–1648 which was then before the National Labor Relations Board, the outcome of which, Braswell alleged, would be "dispositive of the issues concerning the questions of representation of employees of Defendant." In connection with this and related defenses, Braswell secured the issuance of the subpoena directing Regional Director Davis to appear "to testify on behalf of Defendant at the taking of a deposition in the above entitled action pending in the United States District Court for the Western District of Texas and bring with you all documents, memoranda, or instructions pertaining to requests of the Regional Director of the Sixteenth Region of the National Labor Relations Board for advice or instructions from the office of the General Counsel of the National Labor Relations Board, Washington, D. C. relating to case No. 16–CB–17 and any and all documents, memoranda or analysis pertaining to advice, instructions or directions of the said Office of the General Counsel to the Regional Director of the Sixteenth Region of the National Labor Relations Board pertaining to Board Cases Nos. 16–CB–17, 16–CA–847, 16–RC–3398, 16–RC–3399, 16–RC–3400 and 16–RC–3401." Davis moved to quash the subpoena on the grounds noted above, and the District Court, after viewing the subpoenaed documents in camera "for determination of privilege and materiality," granted the motion in part and denied it in part. The relevant portion of that order is as follows:

"THEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED, that the Motion to Quash the Subpoena is hereby overruled to the extent that the same may call for the production of testimony or evidence from the National Labor Relations Board concerning findings or determinations by it, if any, whether pre-

liminary, temporary or final, as to whether or not the plaintiffs herein are in fact the bargaining agents for the majority of employees of defendant; and it is further ordered that to the extent said subpoena may call for testimony or evidence concerning any other matter within the knowledge or possession of National Labor Relations Board, said motion to quash is hereby sustained."

Subsequent to the filing of notice of appeal in this case, the Board issued its final decision and order in Case No. 16–CA–1648 (154 NLRB No. 20). Appellant moved this Court to remand the instant proceeding to the District Court for reconsideration of its order in light of the Board's action. The motion was denied on August 30, 1965.

### I.

The initial point for our consideration is the failure of Braswell to request the General Counsel's consent to the disclosure of the subpoenaed material as required by Section 102.118 of the Board's Rules and Regulations. This Court discussed the application of 102.118 in N. L. R. B. v. Capitol Fish Co., 5th Cir. 1961, 294 F.2d 868. Judge Wisdom noted that:

"Cases upholding such regulations do not purport to grant an absolute freedom to the executive to prevent use of department papers as evidence. Validation of the regulations rests directly on the theory that as a matter of internal management the head of an agency is authorized to reserve to himself the authority to release the records."

Id. at 873. The Court concluded that:

"An agency has a legitimate and tidy housekeeping objective in centralizing the determinations of when to assert and when not to assert a privilege. That objective is fulfilled *when permission is requested from the head of the agency or other proper party*."[2]

---

2. The Supreme Court recognized the validity of the "housekeeping" function in United States ex rel. Touhy v. Ragen,

1951, 340 U.S. 462, 468, 71 S.Ct. 416, 419, 95 L.Ed. 417, * * *: "When one considers the variety of information con-

Id. at 875 (Emphasis added.) Since the "housekeeping" function is satisfied by a simple request to the appropriate party, the alleged requirement of service of process on the official was rejected as "an additional and unnecessary burden on parties seeking to obtain government records * * * without the slightest compensating improvement in the disposition of justice." Ibid.

■ In the instant case, Braswell seeks to justify its failure to request use of the documents and the testimony of the Regional Director on the grounds that "such a request would have been an exercise in futility." Approval of such an excuse, even if meritorious in a particular case, would defeat the purpose of the regulation to centralize the function of dispersing Board records in the head of the agency. Because of Braswell's failure to comply with the "simple requirement" of seeking permission, the District Court should have granted appellant's motion to quash the subpoena. N. L. R. B. v. Adhesive Prods. Corp., 2d Cir. 1958, 258 F.2d 403, 406.

## II.

■ Although our opinion could conclude at this point, we deem it proper to consider the validity of the privilege asserted by the appellant in order that the proceedings on remand may be expedited. As noted by this Court in *Capitol Fish,* even if the head of the department refuses to permit disclosure of the subpoenaed material, the "ultimate determination of the privilege remains with the courts."[3] 294 F.2d at 875. We have viewed these documents[4] and find that they consist solely of communications between the Regional Director and the General Counsel's office. The documents discuss the actions to be taken by the parties to the correspondence and reveal tentative opinions as to the probable validity of various charges made by Braswell and the unions. With the exception of these two categories of information, the documents do not contain any factual information not already well known to the parties. The asserted purpose of the subpoena was to uncover evidence concerning the Board's findings or determinations, whether preliminary, temporary or final, on the status of the unions as representatives of the employees of Braswell. Under the circumstances in this case, we conclude that this objective cannot be satisfied in this manner and that, therefore, the subpoena should have been quashed.

The observations of Justice Reed are particularly relevant to the instant case:

"Here the document sought was intra-office advice on policy, the kind that a banker gets from economists and accountants on a borrower corporation, and in the Federal government the kind that every head of an agency or department must rely upon for aid in determining a course of action or as a summary of an assistant's research. In the case of governments, '[t]he administration of justice is only a part of the general conduct of the affairs of any State or Nation, and we think is (with respect to the production or non-production of a State paper in a Court of justice) subordinate to the general welfare of the community.' Free and open comments on the advantages and disadvantages of a proposed course of governmental management would be adversely affected if the civil servant or executive assistant were compelled by publicity to bear

tained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious."
See also Harvey Aluminum Inc. v. N.L. R.B., 9th Cir. 1964, 335 F.2d 749, 755 & n. 18.

3. See Sperandeo v. Milk Drivers & Dairy Employees Local 537, 10th Cir. 1964, 334 F.2d 381, 384 & n. 8.

4. The record does not indicate which documents or portions of the documents were suppressed under the District Court's order.

the blame for errors or bad judgment properly chargeable to the responsible individual with power to decide and act. Government from its nature has necessarily been granted a certain freedom from control beyond that given the citizen. It is true that it now submits itself to suit but it must retain privileges for the good of all.

"There is a public policy involved in this claim of privilege for this advisory opinion—the policy of open, frank discussion between subordinate and chief concerning administrative action."

Kaiser Aluminum & Chemical Corp. v. United States, 1958, 157 F.Supp. 939, 945–946, 141 Ct.Cl. 38.

The subpoena here attempts to examine the processes and reasoning of the Board and the General Counsel's office in reaching their conclusions prior to their official publication. A similar situation was discussed by the Supreme Court in United States v. Morgan, 1941, 313 U.S. 409, 421–422, 61 S.Ct. 999, 1004–1005, 85 L. Ed. 1429. The district court had required the Secretary of Agriculture to submit to questioning regarding the process by which he had reached the conclusion reflected in a particular order. The Court concluded that:

"the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding'. Morgan v. United States, 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary'. 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129. Just as a judge cannot be subjected to such a scrutiny, compare Fayerweather v. Ritch, 195 U.S. 276, 306, 307, 25 S.Ct. 58, 67, 49 L.Ed. 193, so the integrity of the administrative process must be equally respected. See Chicago, B & O Ry. Co. v. Babcock, 204 U.S. 585, 593,

27 S.Ct. 326, 327, 51 L.Ed. 636. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other."

■■  The reasons for the rejection of any attempt to delve into the decision-making process of an administrative agency are even more imperative than those which induced the Supreme Court to condemn the investigation of the Secretary of Agriculture. In the words of the Third Circuit:

"The essence of the discussion of a common cause and the judgment ensuing upon that discussion must lie in freedom of expression. If those present during the discussion are aware that their sentiments, either tentative or final, may be revealed by their fellow participants, it is clear that caution or worse would remove all candor from their minds and tongues. The logic of this position requires the preservation from questioning of each member of the general body. * * *

"As a matter of policy * * *, we think that efficient deliberation by a quasi-adversary, such as the Labor Board, is even more necessary than efficient deliberation by a neutral, such as a judge or a jury. Furthermore, since the litigants before the Labor Board are legion, the evil of harassment * * * is correspondingly multiplied. The function of deciding controversies might soon be overwhelmed by the duty of answering questions about them."

N. L. R. B. v. Botany Worsted Mills, 3d Cir. 1939, 106 F.2d 263, 267; see Wigmore, Evidence § 2378, at 807–08 (McNaughton rev. 1961). For these reasons, intra-agency correspondence discussing the course of conduct to be followed by the parties and expressing opinions as to the merits of various claims presented to the agency enjoys at least a qualified

privilege[5] which, in the absence of special circumstances, shields it from examination by the public. See General Engineering, Inc. v. N. L. R. B., 9th Cir. 1965, 341 F.2d 367, 376; N. L. R. B. v. Jamestown Sterling Corp., 2d Cir. 1954, 211 F.2d 725, 726; Kaiser Aluminum & Chemical Corp. v. United States, supra, 157 F.Supp. at 746–747. Since Braswell has not presented sufficient justification in this case for overriding this privilege, the sound policy behind the privilege requires that the subpoena be quashed.

Because we have concluded that the motion to quash the subpoena should have been granted for the reasons discussed above, we do not need to consider the appellant's other contentions. The case is remanded to the District Court for proceedings not inconsistent with this opinion.

Reversed.

5. Appellant admits that its asserted privilege is not absolute and that in some situations "a litigant's need for data in Government files may be so compelling and the dangers of disclosure so minimized that discovery would be appropriate." Brief for Appellant, p. 27.