SMITH, Judge.
The Columbia County Board of Public Instruction petitions for review of an order of the Public Employees Relations Commission finding the Board committed an unfair labor practice, in violation of Section 447.- *129 501(l)(a) and (b), Florida Statutes (1975),[1] by not rehiring Jack W. Adams because of Adams’ union activity. PERC ordered Adams reinstated with full back pay.
Adams was a nontenured refrigeration mechanic. At the end of the 1974-75 school year, Adams’ supervisor and the superintendent recommended that the Board eliminate Adams’ position and not rehire him in the succeeding year. The Board accepted that recommendation. The hearing officer and PERC found on substantial evidence that the supervisor’s and superintendent’s recommendation was motivated by their disapproval of Adams’ organizational activities among school employees. The Board urges that Adams’ poor attitude and unsatisfactory work justified their acceptance of the superintendent’s recommendation. The hearing officer and PERC exonerated the Board itself of anti-union motivation:
“[N]o bad faith can be ascribed to the members of the school board by their support of the superintendent’s recommendation against rehire of Adams

We are here concerned with the extent of the Board’s vicarious responsibility, in an unfair labor practice proceeding before PERC, for its agent’s motive to discourage membership in employee organizations “by discrimination in regard to hiring, tenure, or other conditions of employment,” Section 447.501(l)(b); and we must determine the circumstances in which employee discharge may be justified on a legitimate ground although anti-union motive was a factor leading to the discharge decision.
Lacking guidance from Florida court decisions construing controlling provisions of the relatively new Public Employees Relations Act, we have examined decisions applying Section 8(a)(1) and (3) of the National Labor Relations Act,[2] from which the relevant provisions of Section 447.501 were drawn.[3] The NLRA does not deprive an employer of the right to discharge union members or organizers for legitimate reasons. NLRB v. Audio Industries, Inc., 313 F.2d 858 (7th Cir. 1963); NLRB v. Universal Camera Corp., 190 F.2d 429 (2d Cir. 1951). See also Local 357, International Brotherhood of Teamsters, etc. v. NLRB, 365 U.S. 667, 677-85, 81 S.Ct. 835, 840-44, 6 L.Ed.2d 11, 19-23 (1961) (Harlan, J., concurring). But if the employee’s union activity is the reason for the employer’s action, discharge is an unfair labor practice even if legitimate grounds for discharge exist. NLRB v. Central Power and Light Co., 425 F.2d 1318 (5th Cir. 1970); NLRB v. Princeton Inn Co., 424 F.2d 264 (3d Cir. 1970); NLRB v. Jamestown Sterling Corp., 211 F.2d 725 (2d Cir. 1954). The Supreme Court has held “the ‘real motive’ of the employer in an alleged § 8(a)(3) violation is decisive.” NLRB v. Brown, 380 U.S. 278, 287, 85 S.Ct. 980, 985-86, 13 L.Ed.2d 839, 846 (1965); Radio Officers’ Union v. NLRB, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455, 41 A.L.R.2d 621 (1954); Associated Press v. NLRB, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953 (1937). Because an employer may act with mixed motives, federal law recognizes a “but for” or “moving cause” test for determining the employer’s “real motive”:
“The test is whether the business reason or the protected union activity is the moving cause behind the discharge. NLRB v. Security Plating Company, 356 *130 F.2d 725, 728 (9th Cir. 1966). See also Kellwood Company, Ottenheimer Bros. Mfg. Div. v. NLRB, 411 F.2d 493, 498 (8th Cir. 1969). In other words, would this employee have been discharged but for his union activity? Southwest Latex Corp. v. NLRB, 426 F.2d 50, 54-55 (5th Cir. 1970).” NLRB v. Ayer Lar Sanatorium, 436 F.2d 45, 50 (9th Cir. 1970) (emphasis in original).
See also NLRB v. Milco, Inc., 388 F.2d 133, 138 (2d Cir. 1968); Erie Strayer Company, 213 NLRB 344 (1974); P. G. Berland Paint City, Inc., 199 NLRB 927 (1972); and NLRB v. Fibers Int’l Corp., 439 F.2d 1311, 1312 (1st Cir. 1971) (requiring proof that “the employer’s dominant motive was not a proper business one, but union animus.”; See a discussion of the federal cases in Escamilla v. Marshburn Bros., 48 Cal. App.3d 472, 482-84, 121 Cal.Rptr. 891, 896-97 (1975).
The purpose of PERA’s Section 447.501(l)(a) and (b), like that of the corresponding NLRA provisions, is to ensure that public employees engaged in protected collective bargaining activities are treated no differently from other public employees. The federal administrative and judicial test for the presence of prohibited employer activity seems entirely appropriate to the Florida statutory purpose. We hold that an employer subject to PERA commits an unfair labor practice, remediable by PERC, when its motive for discharging an employee is to punish for or discourage organizational activity and the employee would be retained but for his union activity.[4] When there is proof before PERC that an impermissible motive was one of two or more factors in the employer’s decision to terminate, the burden necessarily falls on the employer to adduce evidence that it would have reached the same decision without consideration of the protected activity. The United States Supreme Court recently adopted a similar rule for assessing the significance of an employee’s First Amendment activity in a discharge decision. Mount Healthy City School District v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
Although the hearing officer did not specifically find that the Board would have retained Adams but for his organizational activities, the record supports no other conclusion. The hearing officer’s recommended order stated: “Although both Taylor [Adams’ supervisor] and [superintendent] Phillips disclaimed the fact that Adams’ organizational activities had any influence on their failure to nominate and recommend him for continual hire, the facts justify a contrary view.” The hearing officer found “the factors of attitude and performance of duty were not the effective cause of [Adams’] dismissal”:
“Adams alone of the nine maintenance employees who received preliminary letters indicating that they would not be rehired was, in fact, the only employee who was not retained. In sum, the evidence supports the proposition that the failure to rehire Adams was primarily the result of his activities with the employee organization . . . .”
The Board’s apparent good faith in acting on the superintendent’s tainted recommendation does not isolate the superintendent’s impermissible motive from its causative effect. The record indicates that the Board routinely accepted the superintendent’s hiring recommendations[5] and that the superintendent routinely accepted, without investigation, the recommendations *131 of principals and supervisors. In these circumstances a terminated employee need not show that the Board itself acted with motives proscribed by PERA. It is sufficient proof that the recommendation of a subordinate official, so motivated, effectively produced the discharge.
We have considered the Board’s contention that PERC improperly increased the recommended penalty and find it to be without merit. However, PERC will take action appropriate to restore or allow the employer credit for unemployment compensation benefits received by Adams before his reinstatement. The petition for review is DENIED. PERC’s petition for enforcement of its order is GRANTED.
MILLS, Acting C. J., and ERVIN, J., concur.

. Section 447.501 provides in part:
“(1) Public employers or their agents or representatives are prohibited from:
(a) Interfering with, restraining or coercing public employees in the exercise of any rights guaranteed them under this part.
(b) Encouraging or discouraging membership in any employee organization by discrimination in regard to hiring, tenure, or other conditions of employment.”

. 29 U.S.C. § 158 (1970) provides:
“(a) It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 157 of this title;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . .

.See McGuire, Public Employee Collective Bargaining in Florida — Past, Present and Future, 1 Fla.St.U.L.Rev. 26, 107-08 (1973).

. We have today adopted the same rule in Pasco County School Board v. PERC, 353 So.2d 108 (Fla. 1st DCA 1977).

. Sec. 230.23(5)(b), Fla.Stat. (1975) requires school boards to accept the recommendations of the superintendent concerning employment of noninstructional personnel unless the school board has good cause to reject a recommendation. In this case the Board had notice of cause to reject — or at least to investigate the motive behind — the recommendation that Adams not be rehired, because prior to the Board meeting at which that recommendation was approved Adams’ employee organization filed an unfair labor practice charge alleging superintendent Phillips told Adams he would be fired if he continued his union organizational activities.